CARROLL, Judge
(dissenting).
The determinative question, as stated in the majority opinion, is whether the court correctly found that the disputed portion of Broad Causeway is within the jurisdiction of the Town of Bay Harbor Islands.
The majority concludes that the trial court was correct in answering that question in the affirmative. With that conclusion I disagree, and I respectfully dissent from the majority’s judgment of affirmance.
The charters of the municipalities of the City of North Miami and the Town of Bay Harbor Islands were provided by the legislature in 1953. Their boundaries met at a point on Broad Causeway. The disputed area of the causeway is the westerly portion thereof, which is beyond and outside the defined limits of the Town of Bay Harbor Islands, and lies within the charter defined limits of the City of North Miami. That being so, the question as to whether the charter of the Town, which became effective some weeks after that of the City, effectively operated to take jurisdiction and control of that part of Broad Causeway out of the City of North Miami and place it in the jurisdiction and control of the Town of Bay Harbor Islands, is one that must be determined from the wording of the Bay Harbor Islands charter, the pertinent portion of which is § 6, entitled “Boundaries.” A part of that section is quoted in the majority opinion. The complete section is as follows:
“Section 6. Boundaries. — The corporate limits of the Town of Bay Harbor Islands, in Dade County, Florida, are hereby fixed, defined, and established so as to include the following lands and territory in said county of Dade, in the State of Florida, to-wit:
“(A) All of Bay Harbor Island, a subdivision of Dade County, Florida, as shown in the plat thereof, which plat was recorded in Plat Book 46, at Page 5, of the Public Records of Dade County, Florida. The street designated as 96th Street in the recorded plat has always been known as Kane Concourse and shall henceforth be known as Kane Concourse.
“The jurisdiction and powers of the Town of Bay Harbor Islands shall extend over all streets, alleys, sewers, parks, bridges, including but not limited to the bridge spanning Indian Creek and the approach thereto from the East, which bridge connects Bay Harbor Islands with Surfside and Bal Harbour, causeways, including but not limited to the Broad Causeway, and all approaches thereto, and all lands within said area, whether platted or unplatted, and to and over all waters, waterways, streams, bays, bayous, submerged lands, water bottoms and wharves, and to an over all persons, firms and corporations, property and property rights, occupations, businesses and professions whatsoever within said boundaries.
“The title to and jurisdiction over all streets, thoroughfares, parks, alleys, public lots, bridges, causeways, waters, waterways, and sewers, within the Town, and all other property and municipal plants of the Town now owned, pos *518 sessed or operated by it, and all property of every kind and character which the Town may hereafter acquire within or outside of the Town, or which may vest in it, or be dedicated to it, for its use or for the public use, shall be vested in the Town of Bay Harbor Islands, as created under this act. Also, this title to all tidewater and other lands, and all creeks, bayous, and bay bottoms, and all waters, waterways and water bottoms, and all riparian rights within and adjacent to the Town limits, now owned by the State of Florida, shall be vested in the Town of Bay Harbor Islands, for municipal purposes only.
“The State of Florida does hereby surrender and grant to the said Town any claim or control that it might have over all tidewaters * * * waterways and water bottoms, and all riparian rights within and adjacent to said Town limits for municipal purposes only.”
In subparagraph (A) of § 6 the corporate limits of the Town were stated to be those defined on the recorded plat of Bay Harbor Islands. It is not contended that the recorded plat of the Town invaded or purported to include any land or area which was within the defined boundaries of the City of North Miami.
In the next paragraph of § 6 it is provided that the Town’s jurisdiction and powers shall extend over all streets, alleys, sewers, parks, bridges, causeways, including but not limited to the Broad Causeway, and all approaches thereto, and all lands within said area.
Right there a pivotal question of construction appears, and that is: Whether, where the corporate limits of the Town are declared to be those fixed by the recorded plat thereof, the further provision that the jurisdiction and powers of the Town should extend over streets, alleys, causeways, and the approaches thereto, and lands “within said area”, should be construed to have conferred upon the Town jurisdiction and powers over those parts of all streets and causeways leading into the Town which are outside the Town’s limits, or whether that provision should be construed to confer jurisdiction and powers to the Town over the portions of such facilities which are within its boundaries. The trial court, affirmed by the majority opinion, placed the former construction on that provision of the charter. I would construe it as a grant of jurisdiction and powers over such facilities where and to the extent they are within the boundaries of the Town. For example, if a through street, such as Collins Avenue, after passing for some miles through adjoining cities should also extend into a town or city having such a charter provision, would the latter have jurisdiction and control thereof in the other cities ?
The same question arises from the next paragraph of § 6 of the charter, which provides that title and jurisdiction shall be vested in the Town of all streets, thoroughfares, parks, alleys, public lots, bridges, causeways, waters, waterways, and sewers, within the Town. I observe no basis to construe that paragraph of § 6 of the Town’s charter to grant it title and jurisdiction over streets, parks, alleys, public lots, bridges, causeways, etc. that are not within- the territorial limits of the Town. In that paragraph it is clearly expressed that the items or facilities so listed are those which are “within the Town.” That the foregoing provision was not intended to grant title, jurisdiction or control over streets, bridges, causeways, etc., not owned by and within the corporate limits of the town, is emphasized by the further provision in that paragraph of the charter to the effect that the Town’s title, jurisdiction and powers will extend to property which the Town thereafter may acquire within or outside of the Town. In this case it was not contended that the land in question had been acquired by the Town from the City of North Miami by condemnation or purchase.
There is no express provision in the charter for the Town to have title, juris *519 diction, or powers over streets, thoroughfares, parks, bridges, causeways, etc. lying outside of the defined limits of the Town, or of any of such facilities which may lie within the boundaries of the City of North Miami. In the absence thereof, I do not observe reasonable basis to construe § 6 of the charter to so provide. As I read the language thereof, the Town’s geographical limits are fixed, and it is given title, jurisdiction and powers as to those several listed facilities which are within the defined limits of the municipality.
I dissent also from the holding of the majority that the City of North Miami is estopped to assert that the Town of Bay Harbor Islands does not have title or jurisdictional control over the part of Broad Causeway which is beyond the limits of the Town of Bay Harbor Islands and within the corporate limits of the City of North Miami. The basis upon which such estop-pel was claimed by the Town is that in a prior suit in which Bay Harbor Islands sought to enjoin North Miami from billing the Town of Bay Harbor Islands for taxes on a service station it had constructed on a part of the causeway which lay within the corporate limits of North Miami, a stipulation was made on behalf of North Miami that it would cease taxation thereof, whereupon the action was dismissed. No question of res judicata is involved. There was no judgment entered in that case on the merits. Moreover, I could not subscribe to the proposition that a stipulation or expression of consent by a city attorney can operate to change the boundaries of a municipality, or to divest it of the ownership or jurisdiction of lands or areas, such as streets or causeways which are owned by the city and within its boundaries and jurisdiction as fixed by the legislature. It is an understatement to say that some more formal action would be required to effectively bring about such a result.
In my opinion the judgment should be reversed.